ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY & CASUALTY INSURANCE
COMPANY,
ALLSTATE NEW JERSEY INSURANCE COMPANY, AND
ALLSTATE VEHICLE AND PROPERTY INSURANCE
COMPANY F/K/A DEERBROOK INSURANCE COMPANY,

Plaintiffs,

vs.

ALEXANDER BANK,
ROBERT SOLOMON, M.D.,
RICHMOND RADIOLOGY, P.C.,
AND ALBA MANAGEMENT, INC.,

Defendants.

Civil Action No._____

## PLAINTIFFS' COMPLAINT

The plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, and Allstate Vehicle and Property Insurance Company f/k/a Deerbrook Insurance Company (collectively "Allstate" and/or "Plaintiffs"), by its attorneys, Smith & Brink, P.C., allege as follows:

## I.  INTRODUCTION

1.      Robert D. Solomon, M.D. ("Solomon"), working in concert with (a) co-conspirator, non-licensed layperson, Alexander Bank ("Bank"), (b) professional service corporations, Richmond Radiology, P.C. ("Richmond") and Complete Radiology, P.C. ("Complete") and (c) Bank's management company, ALBA Management, Inc.,

("ALBA") (collectively "defendants"), defrauded Allstate by perpetrating a medical billing fraud scheme in violation of state and federal law. Each of the individuals and entities listed above conspired with one another to accomplish and/or further the objectives of the scheme detailed herein.

2.      This action seeks actual damages of $2,062,833.62, representing "No-Fault" insurance payments that were improperly obtained from Allstate through the operation of medical professional service corporations that were owned and controlled by a non-licensed layperson in violation of New York law.

3.      Allstate estimates that the defendants submitted hundreds of bills for medical treatment purportedly rendered to persons eligible for insurance coverage under Allstate insurance policies.

4.      By this pleading, Allstate brings claims against the defendants seeking money damages for: (a) violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)-(d); (b) common law fraud; and (c) unjust enrichment.

5.      Allstate also seeks a declaration that Richmond is not eligible to receive No-Fault reimbursement under New York law.

6.      All of the acts and omissions of the defendants described throughout this Complaint were undertaken intentionally.

7.      The defendants' insurance fraud scheme was designed to and did, in fact, result in the payment of automobile insurance contract proceeds ("No-Fault" benefits) from Allstate to the defendants.

8.     In connection with each claim detailed throughout this Complaint, an Allstate automobile insurance contract was the platform upon which the defendants perpetrated their fraudulent scheme.

9.     The defendants knew that the patients identified in this Complaint were eligible for insurance coverage pursuant to automobile insurance policies issued by Allstate.

## II.     THE PARTIES

### A.     Plaintiffs

10.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Allstate Vehicle and Property Insurance Company f/k/a Deerbrook Insurance Company are corporations duly organized and existing under the laws of the State of Illinois, having their principal places of business in Northbrook, Illinois.

11.     Allstate New Jersey Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Bridgewater, New Jersey.

### B.     Defendants

#### 1.     Nominal Physician ("Paper") Owner

##### a.     Robert Solomon, M.D.

12.     Solomon resides in and is a citizen of the State of New York.

13.     At all times relevant, Solomon was licensed (License No. 180577) by the State of New York to practice medicine.

14. On or around October 31, 1989, Solomon was granted his license to practice medicine in the State of New York.

15. According to the New York State Physician Profile website (www.nydoctorprofile.com), Solomon's field of medicine is Diagnostic Radiology and he is certified by the American Board of Diagnostic Radiology.

16. At all relevant times, Solomon purported to be the sole officer, director, and shareholder of Richmond and Complete.

### 2. PC Defendant

#### a. Richmond Radiology, P.C.

17. According to the New York Department of Education's Office of the Professions, Richmond is a professional service corporation (PSC No. 041767) with a principal place of business at 2025 Richmond Ave, Staten Island, NY.

18. At all relevant times, Solomon was the sole officer, director, and shareholder of Richmond; however, Solomon ceded actual ownership and control of Richmond to Bank, a non-licensed layperson, in violation of New York law.

19. At all relevant times, and in direct violation of New York Business Corporation Law §1508, Bank has exercised complete dominion and control over Richmond.

20. By virtue of its ownership and control by a non-licensed layperson, Richmond has been ineligible to collect No-Fault benefits under New York law since April 5, 2002.

### 3. **Management Defendants**

#### a. Alexander Bank

21. Bank is a non-licensed layperson who, at all relevant times, exercised complete ownership, dominion and control over Richmond and Complete in violation of New York law.

22. Bank resides in and is a citizen of the State of New York.

23. Bank has never been a licensed medical professional.

#### b. ALBA Management, Inc.

24. ALBA Management, Inc. ("ALBA") is a domestic business corporation with a principal place of business at 2025 Richmond Avenue, Staten Island, NY.

25. ALBA was incorporated on or around May 23, 2002 to provide management services to medical providers.

26. According to the New York Department of State, Division of Corporations, Bank was, at all relevant times, the Chairman and Chief Executive Officer of ALBA.

27. At all relevant times, Bank, through ALBA, owned and controlled Richmond and Complete in direct violation of New York law.

## III. **JURISDICTION AND VENUE**

28. Jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1331, § 1332, 18 U.S.C. § 1962(c)-(d), and 18 U.S.C. § 1964. Supplemental jurisdiction over the state law claims is proper under 28 U.S.C. § 1367.

29.     Venue is proper under 28 U.S.C. § 1391(c) whereas the vast majority of the wrongful acts known to Allstate as alleged herein with particularity were carried out within the Eastern District of New York.

## IV.     NO-FAULT LAWS AND LICENSING STATUTES

30.     Allstate underwrites automobile insurance in the State of New York.

31.     New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services.

32.     Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq.*), and the regulations promulgated pursuant thereto (11 NYCRR § 65, et seq.) (collectively "the No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Allstate claimants.

33.     No-Fault Benefits include up to $50,000.00 per Allstate claimant for reasonable expenses that are incurred for necessary healthcare goods and services.

34.     A patient can assign his/her No-Fault Benefits to healthcare providers.

35.     Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form required by the New York State Department of Insurance (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3").

36.     Pursuant to § 403(d) of the New York State Insurance Law, NF-3s must be verified by the healthcare provider subject to the following warning: "Any person who

6

knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime" (hereinafter referred to as the "NF-3 Verification").

37. Pursuant to New York's No-Fault Laws, fraudulently incorporated professional corporations are not eligible to receive No-Fault Benefits.

38. In New York, only a licensed medical doctor may: (a) practice medicine; (b) own and control a professional service corporation authorized to practice medicine; (c) employ and supervise other physicians; and (d) derive - absent statutory exceptions not applicable in this case - economic benefit from physician services.

39. New York's No-Fault Laws provide that "[a] provider of healthcare services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York." *See* 11 NYCRR §65-3.16(a)(12).

40. New York Business Corporation Law § 1504 provides that no professional service corporation may render professional services except through individuals authorized by law to render such professional services as individuals.

41. Section 1507 of the Business Corporation Law of New York prohibits a professional service corporation from issuing shares to individuals unless they are "engaged in the practice of such profession in such a corporation." It also prohibits such shareholder(s) from entering into any agreement, granting proxies or transferring control

to individuals who are not authorized by law to practice the profession for which the professional corporation is authorized to practice.

42.    Pursuant to Section 1508 of the Business Corporation Law of New York, no individual may be a director or officer of a professional service corporation unless he is authorized by law to practice in this state a profession which such corporation is authorized to practice.

43.    Under Section 6530(19) of the Education Law of New York, it is professional misconduct for a licensed physician to permit any person to share in the fees for professional services, other than a partner, employee, associate of a professional firm or corporation, professional subcontractor or consultant authorized to practice medicine, or a legally authorized trainee practicing under the supervision of a licensee.

44.    In New York, insurers are not precluded from seeking affirmative recovery against individuals and entities who have violated the above statutes and regulations.

45.    In *State Farm v. Mallela,* 4 N.Y.3d 313 (2005), the New York Court of Appeals upheld 11 NYCRR §65-3.16(a)(12) holding that medical corporations that are fraudulently incorporated under New York Business Corporation Law §§1507 and 1508 and New York Education Law §6507(4)(c) are not entitled to reimbursement.

46.    In the matter, *Metroscan Imaging, P.C. v. GEICO,* 823 N.Y.S.2d 818, 821-822 (2006), it was held that an insurer may maintain a cause of action against a fraudulently incorporated medical provider to recover monies paid after April 5, 2002 (11 NYCRR 65-3.16(a)(12)'s effective date).

## V.    **FACTUAL BACKGROUND REGARDING FRAUDULENT INCORPORATION OF RICHMOND AND COMPLETE**

47.    As discussed below, the defendants, at all times relevant, knew that: (a) Richmond and Complete were actually owned and controlled by a person not licensed to practice medicine, and (b) Bank, a non-licensed layperson, personally profited from the operation of Richmond and Complete.

48.    The defendants implemented a massive fraud scheme through which they billed the New York automobile insurance industry millions of dollars through Richmond and Complete, which were illegally owned and controlled by a non-licensed layperson, and ineligible for No-Fault Benefits.

49.    To circumvent New York law and to induce the Department of Education to issue a certificate of authority authorizing Richmond and Complete to be organized as medical professional service corporations, Bank and ALBA conspired with Solomon to falsely represent that Solomon was the sole shareholder, director and officer of Richmond and Complete.

50.    The ownership and control of Richmond and Complete by a non-licensed layperson compromised patient care, as the provision of health services by Richmond and Complete was, at all relevant times, subject to the pecuniary interests of non-physicians as opposed to the exercise of independent medical judgment by a true doctor-owner.

51.    Because Richmond and Complete were (a) fraudulently incorporated, (b) used as conduits to illegally split fees with a non-licensed person and allow Bank to personally profit from the provision of physician services, and (c) not controlled or operated by a licensed medical physician, Richmond and Complete were, at all relevant times, ineligible to pursue and collect No-Fault Benefits under New York law.

52.     From at least 2002 through the present, true ownership and control of Richmond and Complete has rested entirely with Bank and ALBA, who used the facade of these PCs to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

53.     As part of the scheme, Solomon permitted Bank and ALBA to exercise total dominion and control over the operations of Richmond and Complete, including their No-Fault account receivables.

54.     Solomon played no role in the day-to-day operation, management and/or control of Richmond and Complete.

55.     Upon information and belief, while a majority of the insurance proceeds collected by Richmond and Complete were actually deposited into the accounts of the PCs, the funds were, in large part, moved into the operating accounts of ALBA, and the profits of the PCs' operation were eventually transferred into Bank's personal account, or withdrawn from ALBA's operating account in cash.

## VI.    SPECIFIC EVIDENCE OF THE ILLEGAL CORPORATE PRACTICE OF MEDICINE

56.     All decision-making authority relating to the operation and management of Richmond and Complete has been vested exclusively with the Management Defendants.

57.     Solomon has (a) never controlled or maintained any of Richmond and Complete's corporate books and records; (b) never selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of

Richmond and Complete's business affairs; and (c) never hired or supervised any of Richmond and Complete's employees or independent contractors.

58.     Every NF-3 form (i.e. bill) mailed to Allstate misrepresented and/or concealed material facts regarding the assertion that Richmond and Complete were properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).

59.     In fact, Richmond and Complete were never eligible for No-Fault benefits because they were owned and/or controlled by Bank and, because Bank personally profited from the PCs' operation.

60.     Beginning in at least 2002, and continuing until the present day, the defendants conspired to cause Allstate to pay more than $2,052,704.58, representing reimbursement for No-Fault benefits that the PCs were not entitled to receive.

61.     Solomon's relationship with Bank and ALBA supports the allegation that Richmond and Complete were owned and controlled in violation of NY law.

62.     To conceal his true ownership and control of Richmond and Complete, while simultaneously effectuating pervasive, total control over the PCs' operation and management, Bank arranged to have Solomon, Richmond, and Complete enter into a series of "management," "marketing," and "billing" agreements with ALBA.

63.     These agreements required Richmond and Complete to make substantial payments to ALBA in amounts exceeding ALBA, Richmond and Complete's actual operating costs.

64.     These agreements required Richmond and Complete to compensate Bank and ALBA for the purported performance of certain designated services including

management, marketing, billing and collections regardless of: (a) the volume of Richmond and Complete's business; or (b) the income generated by each of the PCs.

65.     While these agreements ostensibly were created to permit Bank and ALBA to provide "management," "marketing," and "billing" services, they actually were used solely as a tool to permit Bank to: (a) control the day-to-day operations and finances of Richmond and Complete; and (b) siphon the profits derived from the operation of Richmond and Complete.

66.     The agreements between Bank, Solomon, Richmond, Complete and ALBA ensured that Richmond and Complete remained in a constant state of debt to Bank and ALBA, thereby enabling Bank to maintain total control over Richmond and Complete's account receivables, and any No-Fault revenues and profits generated through the operation of the PCs.

67.     During the relevant period, Richmond paid ALBA at least $3,022,560.00 for "management" services. The monies paid to ALBA by Richmond were comprised of monies collected by Richmond as a result of Richmond's collection of No-Fault monies from insurers.

68.     During the relevant period, Complete paid ALBA at least $4,926,000.00 for "management" services. The monies paid to ALBA by Complete were comprised of monies collected by Complete as a result of Complete's collection of No-Fault monies from insurers.

69.     Nearly every check constituting Richmond and Complete's $7,948,560.00 in payments to ALBA were endorsed with a stamp of Solomon's signature.

12

70. Upon information and belief, Solomon played no role in directing or authorizing the payments made to ALBA by Richmond and Complete.

71. During the relevant period, at least $726,499.00 was transferred from ALBA's operating account to Bank's personal bank account. The funds transferred to Bank's personal bank account constitute the No-Fault proceeds collected by Richmond and Complete and subsequently transferred to ALBA.

72. In addition, during the relevant period, Bank personally withdrew approximately $132,887.47 in cash from ALBA's operating account. These cash withdrawals—along with the $726,499.00 in electronic transfers described above—were made in addition to regular "salary" payments ALBA made to Bank during the relevant period.

73. At all relevant times, ALBA collected from Richmond and Complete payments that exceeded ALBA's operating and/or management costs.

74. The surplus monies collected by ALBA (monies that represented the proceeds of No-Fault reimbursements collected by Richmond and Complete) were never returned to Solomon, Richmond or Complete; rather, all surplus No-Fault monies collected by ALBA were transferred to Bank for his personal use.

75. Accordingly, at all relevant times, Solomon, Richmond and Complete illegally split fees with ALBA and Bank, and Bank personally profited from Richmond and Complete's receipt of No-Fault reimbursement from insurers.

76. All of the conduct described above constitutes direct violations of New York law, and rendered Richmond and Complete ineligible to receive No-Fault reimbursement under New York law.

## VII. SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

77.    The defendants created, prepared and submitted false medical documentation and intentionally violated the laws of the United States by devising and intending to devise schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by placing or causing to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. §1341 (mail fraud) for the purpose of executing such fraudulent schemes and attempting to do so.

78.    Unless otherwise pled to the contrary, all documents, notes, reports, health insurance claim forms, medical diagnoses, CPT Code tally sheets, referrals, letters and request for payments in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

79.    Every automobile insurance claim detailed within, involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claims settlement checks and the return of the cancelled settlement drafts to the financial institution(s) from which the draft(s) were drawn, as well as return of settlement draft duplicates to the insurance carrier's home office for filing.

80.    The defendants either personally used the mails to further their fraudulent scheme by causing medical bills and records from illegal clinics to be mailed to Allstate and/or counsel for claimants and/or acted with knowledge that the use of the mails would follow in the ordinary course of business.

81. The defendants fraudulently reported that the clinic was legitimately organized pursuant to the laws of the state of New York.

82. The defendants knew that their offices, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider or the plaintiff would use the mails in connection with each of the fraudulent claims, including issuing payments based upon defendants' fraudulent documentation.

83. Allstate estimates that the defendants' fraudulent medical billing scheme generated hundreds of mailings. A table highlighting selected examples of mail fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 1.

## VIII. SPECIFIC ALLEGATIONS MONEY LAUNDERING RACKETEERING ACTIVITY

84. At all relevant times, defendants engaged in the illegal laundering of No-Fault proceeds collected by Richmond and Complete in violation of 18 U.S.C. § 1956 (laundering of monetary instruments).

85. The defendants conducted a number of transactions involving the No-Fault proceeds collected by Richmond and Complete.

86. Richmond and Complete transferred substantial sums of No-Fault proceeds to ALBA and Bank in violation of 18 U.S.C. § 1956.

87. Pursuant to 18 U.S.C. § 1956(a)(1), the "laundering of monetary instruments" is defined as follows:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity; or… with the intent to promote the carrying on of specified unlawful activity…knowing that the transaction is designed in whole or in part…to

conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

88.     At all relevant times, defendants intentionally engaged in—and benefitted from—the financial transactions described herein.

89.     The defendants intentionally conducted such transactions knowing that the transactions were designed to: (a) promote the defendants' medical billing and fraud scheme; and (b) conceal and/or disguise the nature, source, ownership, and/or control of the proceeds of the defendants' medical billing and mail fraud scheme.

90.     In doing so, the defendants committed numerous violations of 18 U.S.C. § 1956 in furtherance of the instant medical billing scheme.

## IX.    ALLSTATE'S JUSTIFIABLE RELIANCE

91.     Through the submission of medical records, including NF-3 forms, Solomon certified and represented to Allstate that Richmond and Complete were incorporated, owned and operated in compliance with New York law.

92.     As a licensed medical professional, Solomon was obligated—both legally and ethically—to act with honesty, integrity, and in accordance with his professional oath and pledge.

93.     At all relevant times, the defendants actively concealed from Allstate facts regarding Richmond and Complete's ownership and operation to prevent Allstate from discovering that Richmond and Complete were (a) unlawfully incorporated, (b) controlled by a non-licensed layperson and (c) engaged in illegal fee splitting with unlicensed persons; therefore, the PCs are ineligible to bill for or collect No-Fault Benefits under New York law.

94. Through their concerted activities, the defendants intentionally misrepresented Solomon's ownership and control over Richmond and Complete in filings with the New York State Department of Education.

95. In each bill that the defendants submitted or caused to be submitted, the defendants uniformly misrepresented that Richmond and Complete was properly incorporated, lawfully licensed, and eligible to bill for and collect No-Fault Benefits.

96. Each claim submitted to Allstate by Richmond and Complete was verified pursuant to Insurance Law §403.

97. At the time Richmond and Complete submitted patient invoices for payment, Allstate reasonably believed that the actions of Solomon conformed with all applicable laws, and that he was bound by his avowed ethical obligations.

98. To induce Allstate to promptly pay Richmond and Complete's patient invoices, defendants submitted—or caused to be submitted—to Allstate NF-3 forms which represented that Richmond and Complete were owned and controlled by licensed medical professionals in compliance with New York law.

99. Allstate is required, under statutory and contractual obligations, to promptly and fairly process claims within 30 days.

100. The facially valid documents submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to—and, in fact, did—induce Allstate to rely on the accuracy of such documents.

101. In reliance on the representations of Solomon, Allstate paid money to these illegally organized entities to its detriment—monies that Allstate otherwise would

not have paid if Solomon, Richmond and Complete had provided true and accurate information.

102. The defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the radiology services and the submission of charges to Allstate.

103. To induce Allstate to promptly pay the fraudulent charges for the radiology services, the defendants have systemically concealed their fraud and have gone to great lengths to accomplish this.

104. Specifically, the defendants knowingly have misrepresented and concealed facts related to the ownership, control and operation of Richmond and Complete in an effort to prevent discovery that the professional service corporations were owned and controlled by a non-licensed layperson and engaged in illegal fee splitting with unlicensed persons. Allstate is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to Allstate in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to and did cause Allstate to rely upon them. As a result, Allstate has incurred damages of more than $2,062,833.62 dollars based upon the fraudulent charges representing payments made by Allstate since April 5, 2002.

105. Based upon the defendants' material misrepresentations and other affirmative acts to conceal their fraud from Allstate, Allstate did not discover, and could not reasonably have discovered, that its damages were attributable to fraud until shortly before it filed this Complaint.

106. Based upon the defendants' concerted affirmative acts of concealment, Allstate did not discover, and could not reasonably have discovered, that its damages were attributable to the defendants' fraud until shortly before it filed this Complaint.

## X.    DAMAGES

107. The defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law. Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for:

(a) payments in connection with first-party claims of $2,062,833.62, the exact amount to be determined at trial. The table annexed hereto at Exhibits 2-3, and incorporated herein as if set forth in their entirety, identify Allstate's payments to defendants in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

(b) expenses incurred to review, adjust, investigate, litigate and pay the false and fraudulent claims created by the defendants and supported defendants' operation of enterprises through a pattern of illegal activity.

## XI.    CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. §1962(c)
### (Against Robert Solomon, M.D., Alexander Bank and ALBA Management, Inc.)

108. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

109. In connection with each of the claims identified in plaintiffs' Complaint, Robert Solomon, M.D., Alexander Bank and ALBA Management, Inc. ("Count I Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

110. The Count I Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

111. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

112. Policies of insurance were delivered to insureds through the U.S. Mail.

113. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

114. As documented above, the Count I Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Richmond, Radiology P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

115. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Richmond Radiology, P.C., for the benefit of the Count I Defendants, that would not otherwise have been paid.

116. The Count I Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

117. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

118. The Count I Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 as discussed in Section VIII above.

119. By filing numerous fraudulent claims in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

120. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Richmond Radiology, P.C., for the benefit of the Count I Defendants.

121. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

122. Richmond Radiology, P.C., constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

123. The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

124. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

125. The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

126. By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of

the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

## COUNT II
### CONSPIRACY UNDER 18 U.S.C. §1962(d)
**(Against Robert Solomon, M.D., Alexander Bank and ALBA Management, Inc.)**

127.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth here.

128.    Defendants Solomon, Bank, and ALBA ("Count II Defendants") conspired with each other to violate 18 U.S.C. §1962(c) through the operation of Richmond Radiology, P.C. ("Richmond").

129.    The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. §1962(c) by agreeing to conduct the affairs of Richmond by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

130.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Richmond, even though Richmond, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

131.    The Count II Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

132.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

22

133.    By virtue of this violation of 18 U.S.C. §1962(d), the Count II Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATIONS OF 18 U.S.C. §1962(c)
### (Against Alexander Bank and ALBA Management, Inc.)

134.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

135.    In connection with each of the claims identified in plaintiffs' Complaint, Alexander Bank and ALBA Management, Inc. ("Count III Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

136.    The Count III Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

137.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

138.    Policies of insurance were delivered to insureds through the U.S. Mail.

139.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

140.     As documented above, the Count III Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Complete Radiology, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

141.     As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Complete Radiology, P.C., for the benefit of the Count III Defendants, that would not otherwise have been paid.

142.     The Count III Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

143.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

144.     The Count III Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 as discussed in Section VIII above.

145.     By filing numerous fraudulent claims in an ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

146.     The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Complete Radiology, P.C., for the benefit of the Count III Defendants.

147.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

148.    Complete Radiology, P.C., constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

149.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

150.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

151.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

152.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

## COUNT IV
### CONSPIRACY UNDER 18 U.S.C. §1962(d)
### (Against Alexander Bank and ALBA Management, Inc.)

153.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth here.

154. Defendants Bank and ALBA ("Count IV Defendants") conspired with each other to violate 18 U.S.C. §1962(c) through the operation of Complete Radiology, P.C. ("Complete").

155. The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. §1962(c) by agreeing to conduct the affairs of Complete by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

156. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Complete, even though Complete, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

157. The Count IV Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

158. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

159. By virtue of this violation of 18 U.S.C. §1962(d), the Count IV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT V**
**VIOLATIONS OF 18 U.S.C. §1962(c)**
**(Against Alexander Bank, Robert Solomon, M.D. and Richmond Radiology, P.C.)**

160.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

161.    In connection with each of the claims identified in plaintiffs' Complaint, Alexander Bank, Robert Solomon, M.D. and Richmond Radiology, P.C. ("Count V Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

162.    The Count V Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

163.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

164.    Policies of insurance were delivered to insureds through the U.S. Mail.

165.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

166.    As documented above, the Count V Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Richmond and Complete to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

167. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Richmond and Complete, for the benefit of the Count V Defendants, that would not otherwise have been paid.

168. The Count V Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

169. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

170. The Count V Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 as discussed in Section VIII above.

171. By filing numerous fraudulent claims in an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

172. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Richmond and Complete for the benefit of the Count V Defendants.

173. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

174. ALBA Management, Inc. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

175. The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

176. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count V Defendants' conduct.

177. The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

178. By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT VI**
**CONSPIRACY UNDER 18 U.S.C. § 1962(d)**
**(Against Alexander Bank, Robert Solomon, M.D. and Richmond Radiology, P.C.)**

179. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth here.

180. Defendants Bank, Solomon and Richmond ("Count VI Defendants") conspired with each other to violate 18 U.S.C. §1962(c) through the operation of ALBA Management, Inc. ("ALBA").

181. The Count VI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. §1962(c) by agreeing to conduct the affairs of ALBA by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

182. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of ALBA, even though ALBA, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

183. The Count VI Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

184. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

185. By virtue of this violation of 18 U.S.C. §1962(d), the Count VI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VII
## FRAUD
### (Against All Defendants)

186. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

187. The defendants' scheme to defraud Allstate was dependent upon a succession of material misrepresentations of fact that the defendants were entitled to collect No-Fault benefits under New York law.

188.     The misrepresentations of fact by the defendants included, but were not limited to, the material misrepresentations of fact made in defendants' NF-3 forms, medical reports, invoices and collection documentation.

189.     The defendants' representations were false, or required disclosure of additional facts to render the information furnished not misleading.

190.     The misrepresentations were intentionally made by the defendants in furtherance of their scheme to defraud Allstate by submitting claims from fraudulently incorporated medical clinics for No-Fault insurance benefits and bodily injury claims.

191.     The defendants' misrepresentations were known to be false and were made for the purposes of inducing Allstate to make payments for claims that were not legitimate.

192.     Allstate reasonably relied upon such material misrepresentations to its detriment in paying numerous, unreasonable, unnecessary, inappropriate, non-meritorious bills for medical expenses pursuant to no-fault insurance claims, bodily injury claims, and uninsured/underinsured motorist claims.

193.     Allstate's damages include, but are not limited to:

    a.     Monies paid by Allstate to Richmond and Complete representing No-Fault reimbursement even though Richmond and Complete were ineligible to receive such reimbursement;

    b.     Reimbursement for the fair and reasonable value of the labor and resources expended to detect and expose the defendants' scheme to defraud Allstate.

## COUNT VIII
### (Unjust Enrichment)
### (Against All Defendants)

194.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

195.    When Allstate paid Richmond and Complete, it reasonably believed that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations and omissions.

196.    Allstate's payments constitute a benefit which the defendants aggressively sought and voluntarily accepted.

197.    The defendants caused Richmond and Complete to wrongfully obtain payments from Allstate through its fraudulent billing scheme as described more fully in the paragraphs above.

198.    Retention of those benefits would violate fundamental principles of justice, equity and good conscience.

## COUNT IX
### (Declaratory Relief Under 28 U.S.C. § 2201)
### (Against Richmond Radiology, P.C.)

199.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

200.    To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes which grant the authority to provide health services in New York.

201.    In view of its illegal corporate structure, illegal control by a non-physician and illegal fee-splitting with an unlicensed person, Richmond Radiology, P.C. ("PC

Defendant") has been operating in violation of New York's Insurance Laws (and other statutory and regulatory provisions), and thus has not had standing to submit or receive assigned No-Fault benefits.

202.    The PC Defendant continues to submit assigned No-Fault claims to Allstate, and other claims remain pending with Allstate.

203.    The PC Defendant continues to challenge Allstate's prior claim denials.

204.    The PC Defendant continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

205.    A justifiable controversy exists between Allstate and the PC Defendant since the PC Defendant challenges Allstate's ability to deny such claims.

206.    Allstate has no adequate remedy at law.

207.    The PC Defendant will continue to bill Allstate for No-Fault Benefit payments absent a declaration by this Court that its activities are unlawful, and that plaintiffs have no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by the PC Defendant.

208.    Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the PC Defendant, at all relevant times, was fraudulently incorporated, controlled by a non-licensed layperson, and engaged in illegal fee-splitting with an unlicensed lay person in violation of New York's Insurance Laws and New York General Business Law §349 (and other statutory provisions), and thus has no standing to submit or receive assigned No-Fault benefits.

## XII.  DEMAND FOR RELIEF

WHEREFORE, plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, and Allstate Vehicle and Property Insurance Company f/k/a Deerbrook Insurance Company (collectively "Allstate"), respectfully pray that judgment enter in their favor, as follows:

### COUNT I
### (Violations of 18 U.S.C. §1962(c))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

### COUNT II
### (Violations of 18 U.S.C. § 1962(d))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

### COUNT III
### (Violations of 18 U.S.C. §1962(c))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT IV
### (Violations of 18 U.S.C. § 1962(d))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just

## COUNT V
### (Violations of 18 U.S.C. §1962(c))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT VI
### (Violations of 18 U.S.C. § 1962(d))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)      GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)      GRANT all other relief this Court deems just.

## COUNT VII
### (Fraud)

(a)      AWARD Allstate its actual damages in an amount to be determined at trial;

(b)      AWARD Allstate its costs, including but not limited to, investigative costs incurred in the

detection of defendants' illegal conduct; and

(c)      AWARD Allstate its costs in defending No-Fault collection suits filed by defendants

seeking payment of false and fraudulent invoices; and

(d)      GRANT any other relief this Court deems just.

## COUNT VIII
### (Unjust Enrichment)

(a)      AWARD Allstate's actual and consequential damages to be determined at trial;

(b)      GRANT any other relief this Court deems just.

## COUNT IX
### (Declaratory Relief)

(a)      DECLARE that Richmond Radiology, P.C. ("PC Defendant"), is operating in violation of

Article 15 of New York's Business Corporation Law, New York Public Health Laws,

New York Insurance Laws, and New York General Business Law § 349, and other

statutory provisions;

(b)      DECLARE that the PC Defendant's activities are unlawful; and

(c)      DECLARE that Allstate has no obligation to pay pending, previously-denied and/or

future No-Fault insurance claims submitted by the PC Defendant; and

(d)      GRANT all other relief this Court deems just and appropriate.

## JURY TRIAL DEMAND

The plaintiffs demand a trial by jury on all claims.

SMITH & BRINK, P.C.

Richard D. King, Jr., (RK8381)
rking@smithbrink.com
Nathan A. Tilden, (NT0571)
ntilden@smithbrink.com
1325 Franklin Ave, Suite 320
Garden City, NY 11530
Ph: (347) 710-0050

Attorneys for the Plaintiffs,
*Allstate Insurance Company, Allstate Indemnity
Company, Allstate Property & Casualty Insurance
Company Allstate New Jersey Insurance Company,
and Allstate Vehicle and Property Insurance
Company f/k/a Deerbrook Insurance Company*

Dated: May 8, 2012